UNITED STATES of America,

v.

RESEARCH FOUNDATION, Inc., Charles S. White, Mark Keller, Benjamin E. Roberts, Pyramid Publishers, Inc., Seymour R. Pollack and Frank Guerrieri, Defendants.

United States District Court
S. D. New York.

Oct. 1, 1957.

Paul W. Williams, U. S. Atty., Southern District of New York, New York City, George C. Mantzoros, New York City, of counsel, for the United States.

1. The chronology set forth in this opinion has been reconstructed by the Court on the basis of the official docket, the clerk's entries on the original indictment, the records of the Criminal Division Clerk of the United States Attorney's Office, the filed motion papers, and the reported decision of People v. White, 1957, 2 N.Y.2d 220, 159 N.Y.S.2d 168, 140 N.E.2d 258.

---

651

Louis I. Kravitz, New York City, for defendants Charles S. White and Research Foundation, Inc.

Arthur E. Levine, New York City, for defendant Benjamin E. Roberts.

**HERLANDS, District Judge.**

These defense motions to dismiss the indictment raise questions concerning the interpretation and application of the Sixth Amendment to the Constitution and Rule 48(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

The Sixth Amendment relevantly provides:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy * * * trial * * *."

Fed.Rules Cr.Proc. rule 48(b), 18 U.S.C.A. provides, so far as pertinent:

> "* * * if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment * * *."

Defendant Benjamin E. Roberts moves to dismiss the indictment on three grounds: (1) that his constitutional right to a speedy trial has been violated; (2) that there has been an unnecessary delay in the prosecution of this case; and (3) "that defendant's health has so deteriorated that subjecting him to trial at this time could have a fatal outcome."

Defendants Research Foundation, Inc. and Charles S. White move to dismiss the indictment for the reasons expressed in the first two grounds of the Roberts motion.

A detailed chronology [1] of the proceedings is essential for the proper consideration and disposition of these motions.

On April 4, 1950, a seven-count indictment was filed herein. It charged defendants with having used the mails pursuant to a fraudulent scheme and with conspiracy so to do. The period of time covered by defendants' activities,

as alleged in the indictment, was from January 1, 1947 to July 12, 1949.

On April 12, 1950, defendants pleaded not guilty; defendants were allowed until April 22, 1950 to make motions; and the case itself was adjourned to April 26, 1950.

(According to defendant White's present moving affidavit, "in the very beginning" he was told "to forget it that there never would be any trial herein as there was nothing here but that the indictment was brought because of the postal authorities getting after the District Attorney's Office." In the same affidavit, White asserts that he was told by William Koerner, the Assistant U. S. Attorney then in charge of the case, "not to worry about it as the matter would never be brought to trial," whereupon White told Mr. Koerner that he was "ready to go to trial right away.")

On April 18, 1950, co-defendant Guerrieri moved to dismiss the indictment; and, on April 19, 1950, defendant Roberts moved to dismiss the indictment.

On April 26, 1950, a notice of appearance was filed by William W. Kleinman, Esq., as attorney for defendant White. On the same date, defendant Roberts' attorney answered "ready," upon the calendar call. The case was adjourned to June 6, 1950 upon application of the prosecutor.

On May 1, 1950, Guerrieri's motion to dismiss was denied; and, on May 5, 1950, Roberts' motion to dismiss was denied.

Between June 6, 1950 and February 6, 1951, there were the following four adjournments of the case, upon the prosecutor's application and although Roberts' attorney answered "ready": from June 6, 1950 to September 11, 1950; from September 11, 1950 to October 2, 1950; from October 2, 1950 to December 11, 1950; from December 11, 1950 to February 6, 1951.

(According to the present moving affidavit of defendant Roberts, on September 11, 1950, he told an "Assistant U. S. Attorney who I believe [he believes] was Mr. Koerner" that "I wanted it [the case] to go to trial without further delay," and that the Assistant told him that "he did not think that it ever would go to trial with me [Roberts] as a defendant." This affidavit also alleges that, on January 24, 1951, he was told [who told him is not stated] "that it did not appear that the case would be brought to trial.")

On February 6, 1951, the case was marked off the calendar, upon the prosecutor's application.

From about June 28, 1950 until February 1951, Assistant United States Attorney Harold J. Raby was in charge of the case, on reassignment from Mr. Koerner.

No further action appears to have been taken in the case until August 24, 1953. On that date, the United States Attorney sent a letter to Roberts asking him to have his counsel "contact this office as soon as possible regarding your prosecution in the above entitled case. It is necessary for this office to confer with your attorney. Would you inform him to call my Assistant James V. Ryan, * *, and make the necessary arrangements."

(According to the Roberts' moving affidavit, Roberts had a telephone conversation with "someone" who "identified himself as an assistant [Assistant United States Attorney]," in the course of which Roberts told that person "that the case should be either dismissed or brought to trial immediately"; and that person replied, "You or your attorney will hear from us.")

In February or March 1954, the defendant White was tried and convicted in the Court of General Sessions, New York County, on a charge of grand larceny set forth in an indictment that had been filed December 2, 1949.

On June 11, 1954, White began serving his two and one-half to five-year sentence imposed upon him by the Court of General Sessions. On June 22, 1954, White's bail (in the present case) was discharged and a bench warrant was ordered to be lodged against him at Sing Sing Prison.

On August 1, 1956, White was released on parole by the New York State Parole Board.

On August 2, 1956, White was brought to this Court on a warrant and was then released on his own recognizance.

Assistant United States Attorney William Koerner (who had been in charge of this case since 1950, except for the period from June 28, 1950 until February 1951) died on June 13, 1957, after a prolonged illness.

On June 19, 1957, a notice that the indictment would be moved for trial on June 26, 1957 was mailed to the defendants.

On June 25, 1957, their present motion papers were filed by defendants White and Research Foundation, Inc.; and, on June 28, 1957, his present motion papers were filed by defendant Roberts.

As already noted, during the period from about June 28, 1950 to February 1951, Assistant United States Attorney Harold J. Raby was in charge of the case. Referring to the adjournments between June 1950 and February 1951, Mr. Raby's opposing affidavit states that these adjournments had been requested by the Government because his "other trial commitments rendered it impractical to prepare the instant case for trial during that period"; and, further, that the case was marked off the calendar on February 6, 1951, because "it was then the policy of the United States Attorney's Office to ask that all criminal cases which were not actually ready for trial, be marked off the calendar."

Mr. Raby categorically denies that he ever told any of the defendants or defense counsel in this case "that the case would not be brought to trial."

Assistant United States Attorney George C. Mantzoros, who was assigned to this case about a year ago, has also submitted an opposing affidavit. Mr. Mantzoros states that, in discussing the trial of this case with Mr. Koerner, Mr. Koerner had said that the case "should be prosecuted" and that he would assist Mr. Mantzoros in the preparation for trial "as soon as he recovered from his illness."

Defendants' claims that Mr. Koerner or someone else in the United States Attorney's Office represented or promised that the case would never be tried impress the Court as incredible; and they are, therefore, rejected by the Court.

Of more controlling importance is the fact that the affidavits filed on behalf of defendants do not allege that any of the defendants ever requested the Court to set the case down for trial. In fact, at no time did defendants move for the fixing of a trial date. None of the defendants ever objected to any of the adjournments or to the dropping of the case from the trial calendar on February 6, 1951. This inaction is fatal to defendants' claim based upon the Sixth Amendment.

The complaint that "justice delayed is justice denied" has not been confined to any one era or to Bench and Bar. In 1215, it was one of the grievances against which Magna Carta was directed.[2]

From Hamlet[3] to the current bestseller,[4] "the law's delay" has evoked continuing protest and satire.

The Federal Bill of Rights and numerous state statutes, like their English and colonial predecessors, have vouchsafed to a defendant in a criminal case the right to a speedy trial.

The constitutional guaranty of a speedy trial has been frequently adjudicated. It is well-established that a defendant who does not object to adjournments and who sits back and does nothing—all in the hope that the Govern-

---

2. "to none will we deny or delay, right or justice." Magna Carta, c. 40. For the most recent translation of Magna Carta, see Ottenberg, Magna Charta Documents: The Story Behind The Great Charter (June 1957), 43 A.B.A. Journal 495, 569, note 2, 571 Appendix.

3. Act III, Sc. 1, line 72: "the law's delay."

4. Cozzens, By Love Possessed (1957) 6: " * * * the law's infinite utilizable resources of obstruction and postponement * * *."

ment will eventually drop the prosecution —waives his constitutional right to a speedy trial. The burden is on the defendant to assert his constitutional right by some affirmative act in court, such as, objecting to adjournments of the trial, demanding a trial, or making an appropriate motion. Danziger v. United States, 9 Cir., 1947, 161 F.2d 299, certiorari denied 1947, 332 U.S. 769, 68 S.Ct. 81, 92 L.Ed. 354; Pietch v. United States, 10 Cir., 1940, 110 F.2d 817, certiorari denied 310 U.S. 648, 60 S.Ct. 1100, 84 L.Ed. 1414; United States v. Sorrentino, 3 Cir., 1949, 175 F.2d 721, certiorari denied 1949, 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532; United States v. Stein, D.C.S.D.N.Y.1955, 18 F.R.D. 17; Worthington v. United States, 7 Cir., 1924, 1 F.2d 154, certiorari denied 1924, 266 U.S. 626, 45 S.Ct. 125, 69 L.Ed. 475; Daniels v. United States, 9 Cir., 1927, 17 F.2d 339, certiorari denied sub nom. Appell v. United States, 274 U.S. 744, 47 S.Ct. 591, 71 L.Ed. 1325; United States v. Alagia, D.C.Del.1955, 17 F.R.D. 15.

In the Worthington case, supra, there had been a delay of about eight years between the filing of the indictment and the trial. In the Pietch case, supra, more than seven years had passed since the termination of the transactions upon which the indictment was based. Moreover, "the United States Attorney stated in person and by letter to counsel for some of the accused that he did not intend to try the case, and that it was his purpose to dismiss it." 110 F.2d 817 at page 819. In these, and in other similar cases, it has been held that the defendant waived his right to a speedy trial because he had failed to present to the court an affirmative request or demand for a trial.

The kind of action that may be taken by a defendant to assert, and thus vindicate, his constitutional right to a speedy trial, is illustrated in Petition of Provoo, D.C.Md.1955, 17 F.R.D. 183, affirmed, 1955, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761, where the indictment was dismissed. In that case, the defendant had filed a petition for a writ of habeas corpus based upon a denial of a speedy trial; thereafter, he objected to further continuances; and later, he moved for a speedy trial or dismissal of the indictment. See also, United States v. Kovacs, D.C.E.D.N.Y.1957, 150 F.Supp. 301 at page 302, where the Court provisionally granted a motion to dismiss the indictment, saying:

"Since then the defendant, through his counsel, has made frequent efforts to have a date fixed for the trial, but to no avail."

■ Having concluded that the defendants herein have waived their constitutional rights under the Sixth Amendment, we now consider whether the Court, in its discretion under Fed.Rules Cr.Proc. rule 48(b), 18 U.S.C.A., should dismiss the indictment because of the "unnecessary delay" in bringing the defendants to trial. This rule articulates "the inherent power of a court to dismiss a case for want of prosecution." United States v. Alagia, supra, 17 F.R.D. at page 16; United States v. McWilliams, 1947, 82 U.S.App.D.C. 259, 163 F.2d 695, 696; Barron, Federal Practice and Procedure (1951) Vol. 4, pp. 86, 427.

In appealing to the Court's discretion, defendants have advanced the claim that, during the seven years since the filing of the indictment, all of their material witnesses have died or have disappeared; that defendant Roberts has such a critical cardiac condition that he cannot stand trial; and, finally, that the Government represented that there would be no trial. These claims, singly and in the aggregate, have been examined as factors bearing upon the exercise of the Court's discretion.

■ A decision to dismiss the indictment on a motion such as this, must rest upon sifted evidence and demonstrated facts. Such proof has not been submitted to the Court.

■ According to White's moving affidavit, "it will be extremely difficult at this time to establish my innocense [sic], for in the meantime, ten (10) of my witnesses have since died in the interim,

each of whom could have given evidence as to the true facts and testified as to my innocense [sic]; * * *." Ten names are then listed by White.

According to White's supplemental moving affidavit, these ten persons would have given exculpatory testimony; and, in addition, there were four other named persons, now deceased, "who were also in a position to give testimony as to pertinent facts herein." This supplemental affidavit (submitted in accordance with the Court's request, expressed during the oral argument, for specific facts) contains a vague and conclusory summary of what two of the original ten witnesses would have testified to and a highly condensed statement of what the additional four witnesses would have testified to.

 The Roberts moving affidavit asserts that he has "wholly lost touch with the people who would have been of help in establishing" his innocence; and that he does "not know where they can be found or whether they are dead or alive."

The Roberts affidavit does not identify any of the aforesaid witnesses by name or otherwise; nor does the affidavit indicate, even in the most general terms, the nature of their exculpatory testimony. There is no statement as to when Roberts last saw or spoke to any of these witnesses.

The foregoing assertions by White and Roberts with respect to the dead or missing or unavailable witnesses are not sufficiently detailed and persuasive to warrant this Court's dismissing the indictment. The moving affidavits lack "the circumstantial detail, the embellishing touches of probability."

For all that appears in the moving papers, the alleged witnesses may have died shortly after the indictment. Even the approximate dates when they died are not given. Because the moving papers are factually inadequate, it is impossible to determine the extent of the alleged prejudice to the defendants or whether the prejudice, if it does exist, is attributable to the delay in bringing the case on for trial.

In the present state of the record, this move to dismiss the indictment may perhaps be regarded as a post mortem alibi. It is based on the alleged facts that all of the defense witnesses have died or are missing, and that an Assistant United States Attorney, now dead, represented that this case would never be tried. There is some basis for believing that, by thus casting deceased persons in exculpatory roles, defendants hope to snatch a defense out of the jaws of death. The tactical theory behind this apparent manoeuvre is familiar: dead men tell no tales.

During the seven years since the indictment was filed, defendants did not avail themselves of the right to move (Fed.Rules Cr.Proc. rule 15, 18 U.S.C.A.) to take the depositions of material witnesses "in order to prevent a failure of justice."

Defendants rely heavily upon People v. Prosser, 1955, 309 N.Y. 353, 130 N.E. 2d 891, where there was a six-year lag between indictment and trial, and the New York Court of Appeals reversed the conviction and dismissed the indictment. The crucial difference between the Prosser case and the present one is that the former was decided squarely upon the particular provisions of the controlling state statute, New York Code of Criminal Procedure, sections 8, 688.

Section 8 of the New York Code of Criminal Procedure requires that a speedy trial be given to a defendant in a criminal action, while section 668 of that Code provides the means by which the defendant may enforce his right. Section 668 declares:

> "If a defendant, indicted for a crime whose trial has not been postponed upon his application, be not brought to trial at the next term of the court in which the indictment is triable, after it is found the court may, on application of the defendant, order the indictment to be dismissed, unless good cause to the contrary be shown."

This state statute expressly imposes the burden upon the prosecution to show

"good cause" why the indictment should not be dismissed. Judge Fuld, speaking for a unanimous court, said (309 N.Y. at page 358, 130 N.E.2d at page 895):

"As we read the statute, it is incumbent upon the prosecution to establish 'good cause' for its own delay, and not simply the fact that the defendant has failed to demand a trial."

Judge Fuld specifically pointed out (309 N.Y. at pages 357–358, 130 N.E.2d 891) that the Federal rule (as well as the rule in certain other states) was different from the New York rule.[5] The Federal courts have had occasion to advert to that difference. See Frankel v. Woodrough, 8 Cir. 1925, 7 F.2d 796, 798; Petition of Provoo, D.C.Md.1955, 17 F.R.D. 183, 198–199.

 The rule now embodied in Rule 48(b) of the Federal Rules of Criminal Procedure places the matter within the sound discretion of the court.

 As an additional ground for the motion, defendant Roberts alleges that he is suffering from an acute heart disease; and that "any unusual emotional stress of physical activity could bring on a fatal coronary thrombosis." Attached to the Roberts moving affidavit, is an unsworn medical certificate on a doctor's letterhead, stating that Roberts has been under the doctor's care "for Coronary Heart Disease since January, 1953"; that Roberts suffered acute myocardial infarctions in 1952 and 1957; and that "it is highly probable" that "either physical or emotional stress or anxiety at this time" would precipitate "another coronary thrombosis with perhaps fatal outcome."

The foregoing state of the record is not sufficient for a dismissal of the indictment.

Defendants, if so advised, may move before the trial judge, upon adequate proof, for what they consider to be appropriate relief based upon Roberts'

physical condition or the allegedly dead or missing material witnesses. If such motion papers are substantial and demonstrate the existence of genuine and bona fide issues, it is possible that the trial judge may order a hearing. As to the matters referred to in this paragraph or the merits thereof, this Court neither expresses nor intimates any opinion.

 Defendants are entitled to a speedy trial. This case must be given a calendar preference of top priority. The Court will not, in the first instance, set the case down for a time certain, but will require the prosecutor to specify the trial date in a proposed order to be settled immediately, on two days' notice. Defendants may likewise submit a counter-order. If the trial date so specified by either side is reasonably prompt under all circumstances, the Court will accept that date. Otherwise, the Court itself will designate the trial date.

The motions are denied in all respects. Submit orders on notice in accordance with the foregoing opinion.

---

5. The New York rule has been adopted in the American Law Institute's Model Code of Criminal Procedure, section 29. See Commentary to that Code, pp. 890–

895, quoting the state statutes "which provide for dismissal of the prosecution for failure to try the accused within a stated time after indictment."