UNITED STATES of America,
Appellee,

v.

Carnie SIMMONS, a/k/a Harold,
Appellant.

No. 105, Docket 28876.

United States Court of Appeals
Second Circuit.

Argued Oct. 15, 1964.

Decided Dec. 1, 1964.

Howard T. Owens, Jr., Asst. U. S. Atty. (F. Owen Eagan, U. S. Atty., on the brief), for appellee.

Norman Zolot, Hamden, Conn., for appellant.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge.

Carnie Simmons appeals from a judgment of conviction following a non-jury trial in which he was found guilty of unlawfully selling narcotics. The indictment contained two counts of knowingly selling heroin known to have been unlawfully brought into the United States, 21 U.S.C.A. § 174, and two counts of selling heroin without the order form prescribed by law, 26 U.S.C.A. § 4705(a). Simmons was convicted on all four counts and sentenced to serve eight years' imprisonment on each count, to run concurrently.

Simmons makes essentially three claims: (1) that the trial court erred in refusing to grant his motion to dismiss the indictment on the grounds of unnecessary delay in presenting the charge to the Grand Jury and in bringing him to trial; (2) that the evidence was insufficient to support the conviction; and (3) that the Government failed to produce an informer as a witness.

In November 1961 Federal Bureau of Narcotics Agent George Dillworth was assigned to an undercover investigation in the Connecticut area. On November 14 and 15, 1961, Dillworth, in the presence of Rayfield Johnson, an informer, purchased heroin from a person alleged to be Simmons. The incidents were under the surveillance of Federal Agent Arthur Doll and two Connecticut State Troopers. No arrest was then made in order to keep Dillworth's identity a secret until the conclusion of various investigations. That point was reached in October 1962 when Simmons and many others were indicted for violation of federal narcotics laws. Immediately upon indictment a bench warrant was issued for Simmons' arrest and a search to locate him was begun. In November 1962 his name was listed on the "Want Notices" list issued by the FBI. Meanwhile, in early December 1961 Simmons had been arrested in Connecticut and taken to New Jersey to serve a jail sentence on another charge. Simmons was released by New Jersey in June 1962 and in September 1962 was arrested in New York under a different name. In April 1963 he was sentenced for one year in New York under still another name. Prior to this time Simmons had been living at several addresses for relatively short periods and using several aliases.

The federal authorities became aware of the New York incarceration on April 29, 1963 and on May 6, 1963, a detainer warrant was lodged against Simmons. He admits to being told of the federal warrant in July 1963, but there was some dispute as to whether he was told of its nature before December 1963. He testified that although he inquired of the state prison officials several times he was not told of its nature until his release in December when he was arrested by the federal officers. The Government asserted, however, that in July 1963 Simmons' file was reviewed with him by the state officials with reference to the detainer, and that in November 1963 a social worker discussed the detainer with him. On January 6, 1964, he pleaded not guilty before Judge Anderson and was granted a two-week continuance of the trial. Simmons' motion to dismiss the indictment under Rule 48(b), Fed.R.

Crim.P.,[1] was denied, and a non-jury trial was had before Judge Timbers. Johnson, the informer, who for some time had himself been a fugitive, was not produced by the Government as a witness.

From all the evidence the trial court could justifiably find Simmons sold the heroin, as charged. At trial, Dillworth identified Simmons as the person who sold to him, and Doll identified Simmons as the person he had seen sell to Dillworth. Both had previously and independently so identified Simmons. Dillworth testified that the seller called himself "Harold" and said he could usually be found at the Diamond Grill, where the sales were made. Simmons admitted using the name "Harold" and was only uncertain whether he had been using it at just that time. He also admitted that he lived two blocks from the Diamond Grill and that he often went there. He denied ever seeing Dillworth before, and before trial he told Doll· that he had never sold narcotics to anyone. Yet he admitted on trial that he had been convicted in 1956 for illegal possession and sale of narcotics. The trial court committed no error in disbelieving Simmons.

Simmons points to certain alleged discrepancies in the Government's case, but the trial court could justifiably have resolved them in favor of the Government. It is certainly not incredible that the seller would not be wearing a coat, though the weather was not warm, since he seems to have just come out of the Grill for a few moments to make the sale. And the omission of mention of the seller's goatee and mustache in an earlier report by Dillworth was also credibly explained by him. Finally, the possible discrepancy as to whether Doll was on foot, as stated in his report, or in a car, was reasonably explained by his recollection that the operation was conducted both ways, in part.

As for the informer, the Government need not call every witness who might have something to say, especially when the sale was not made to the informer and there was additional independent evidence of the transaction. See United States v. Holiday, 319 F.2d 775 (2d Cir. 1963); cf. Roviaro v. United States, 353 U.S. 53, 63–64, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). Here there was no attempt to conceal Johnson's identity or location and Simmons seems to have made no attempt to secure his presence.

Turning to the question of undue delay, Simmons claims that his rights under the Sixth Amendment [2] and Rule 48 (b) were infringed. He stresses the fact that while the offense was committed in October 1961 the trial was not had until January 1964—a total period of 27 months. But the Constitution and Rule 48(b) protect only against unreasonable and unnecessary delay, and those characteristics call for an evaluation of all the circumstances. Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). Thus, the 27 months must be broken down into several segments in order to determine reasonableness.

First, there is the period from offense to indictment—11 months. Congress has provided a five-year statute of limitations, 18 U.S.C.A. § 3282, and under the circumstances of this case there is no reason why in this case a shorter period need, in effect, be applied. See Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808, 809–810 (D.C.Cir.1963). Arrest and indictment of Simmons were held up so that Dillworth could complete his undercover work. Mere delay in arrest does not of itself violate any of Simmons' rights. See United States v. Holiday, supra; cf. Carlo v. United States, 286 F.2d 841, 846 (2d Cir.), cert.denied, 366

---

1. "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

2. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

U.S. 944, 81 S.Ct. 1672, 6 L.Ed.2d 855 (1961). As soon as the investigation was terminated the indictments were obtained, and had Simmons been available he would no doubt have been arrested then, as nine others were. The reasonableness of the delay of the indictment follows *a fortiori* from United States v. Kaufman, 311 F.2d 695 (2d Cir. 1963) where the absence of a Government witness was held sufficient to justify a one-year delay between arrest and indictment, 13 months having elapsed between the offense and indictment. Thus we cannot say that the trial court abused its discretion in refusing to dismiss the indictment for delay between commission of the offense and indictment.

■■ From the indictment, the next period runs until May 1963, when the detainer was lodged, or December 1963, when Simmons was actually arrested—a period of 7 or 14 months. The delay which may be prejudicial is that which is "purposeful or oppressive," Pollard v. United States, supra, 352 U.S. at 361, 77 S.Ct. at 486, and "caused by the deliberate act of the government." Petition of Provoo, 17 F.R.D. 183, 201 (D.Md.), aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). After the indictment Simmons was variously in prisons in Connecticut, New Jersey and New York; he was living in New Jersey and New York at several different addresses; and throughout he was using assumed names. Upon indictment the Government had begun searching for him, and he was finally located in late April 1963 in a New York prison. Within days the detainer was lodged. The Government can hardly be faulted for this delay. Cf. United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (2d Cir. 1963).

Simmons admits talking to a state prison official in July, when he acknowledges he was told of the detainer warrant for a Connecticut federal indictment. He admits talking with the social worker, too, but he denies, contrary to the Government's contentions, that he was informed of the nature of the charges at either time. While he claims to have asked the state prison officials and the social worker about the charges, he admits having made no attempt to communicate with federal authorities—the ones upon whom he is trying to place the responsibility for the delay. The trial court made no findings that support Simmons' claims. It is not for us to determine the credibility of a witness. But even if Simmons did not, in fact, learn of the precise nature of the charges against him until December, rather than July or November, and assuming that lodging of the detainer is equivalent to arrest, this fact did not require a finding that Simmons was prejudiced by that slight delay. This case does not approach the dimensions of Taylor v. United States, 99 U.S.App. D.C. 183, 238 F.2d 259 (1956), where the trial took place 6 years, and the indictment 3 years, after the offense, and for 3 years the defendant, while serving another sentence, was not even told he was under indictment.

■ Finally, there is the question of delay between arrest and trial. Strictly speaking, Simmons was not arrested until he was released from the state prison in December 1963. The one-month delay, caused in part by his request for a two-week continuance surely cannot be thought objectionable. Even taking the date of the detainer as the key point, we reach the same conclusion. That period was—at most—nine months. As we have noted, "[f]our factors are relevant to a consideration of whether denial of a speedy trial assumes due process [or Sixth Amendment] proportions: the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant. See Note, 57 Colum.L. Rev. 846, 861–63 (1957)." United States ex rel. Von Cseh v. Fay, supra, 313 F.2d at 623. Here, the delay was not unduly long. The reason was Simmons' imprisonment in another state. Even assuming, though it is not apparent in the record, that New York would have made Simmons available for trial, compare Kyle v. United States, 211 F.2d 912 (9th Cir. 1954), we do not think it unreasonable for the Government not to put to immediate trial a person having at the most 10 or 11 months remaining to be served on a sen-

tence in a state prison in another state. It is a different matter when the sentence is as long as 6 or 7 years. See Taylor v. United States, supra. In some cases the delay might be so substantial as to be prima facie prejudicial. United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). Simmons claims that the passage of time hindered his recollection about the days in question, but he was absolutely certain that he had not sold narcotics to Dillworth on those days. It is hard to believe that Simmons' recollection would have been appreciably better if the trial had been in mid-1963 than it was in January 1964. Indeed, he would then have had to prepare his case from a New York prison, rather than a location closer to the scene.

Finding the delay justifiable, not unduly long, and not prejudicial, we do not need to consider the question of waiver.

The court expresses its appreciation to Norman Zolot, Esq., court-assigned counsel for his thorough and able presentation of appellant's appeal.

Judgment affirmed.