**UNITED STATES of America**
**v.**
**Theodore MANN, Defendant.**
**No. C 158–189.**

United States District Court
S. D. New York.

Oct. 9, 1968.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for the United States, Frank M. Tuerkheimer, Asst. U. S. Atty., of counsel.

Louis Bender, New York City, for defendant, Charles A. Stillman, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

On March 13, 1959, the defendant, then 67 years old, was charged in a five-count indictment with willful attempts to evade taxes owed by himself and his wife on their income for each of the calendar years 1952 through 1956. The first steps following the indictment were accomplished with "admirable promptness," Klopfer v. State of North Carolina, 386 U.S. 213, 217, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); within two months defendant had entered a plea of not guilty, moved for a bill of particulars, and received the particulars ordered by the court in its partial granting of the motion. Some nine years and three months later, on August 14, 1968, the Government moved the case for assignment to a trial part.

The case was set for trial to begin October 14, 1968, subject to the motion defendant has made under the Sixth Amendment [1] and Fed.R.Crim.P. 48(b) [2] for dismissal of the indictment on the ground that he has been deprived of his right to a speedy trial or, in the words of the Rule, a trial without "unnecessary delay."

The motion is one which requires particularized attention to the specific facts of the case. See Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). The protection invoked guards "only against unreasonable and unnecessary delay, and those characteristics call for an evaluation of all the circumstances." United States v. Simmons, 338 F.2d 804, 806 (2d Cir. 1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965). Specifically, we have been instructed to consider

---

1. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

2. "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

four factors: "the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant * * *." Id., 338 F.2d at 807, quoting from United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963). We proceed, then, to consider these factors in the order stated.

### The length of delay

A delay of 9½ years is patently shocking on its face. This first factor need not detain us. The Government, conceding as much, urges that "the other factors serve to direct the Court's discretion in favor of a denial of the motion."

### Asserted reasons for the delay

The case for the prosecution does not brighten measurably under this heading. Seven Assistant United States Attorneys, successively charged with the case over the years, have filed affidavits. Three of these report that at one time or another defense counsel said something about "'documents" which would establish his client's innocence. More specifically, this series of affiants reports as follows:

(1) The Assistant who had the case until November 6, 1959, says nothing about documents.

(2) The Assistant assigned from November 18, 1959, to June 21, 1961, says defense counsel "promised repeatedly to show me documentary evidence which he said would prove that the machinery sales on which the unreported commissions were alleged to have been paid were never consumated [sic]." He adds that counsel "never produced such documents nor did he state he could not produce them."

(3) The Assistant in charge for the relatively brief period from July 3 to September 12, 1961, never spoke to defense counsel at all and does not indicate that he did anything whatever about an indictment already well over two years old.

(4) The Assistant handling the case from September 13, 1961, to September 4, 1964, almost exactly three years, says he spoke to defense counsel "a number of times" and that the latter "promised to come and speak to me about the case and repeated that promise on numerous occasions, as he had information which would show that his client was not guilty of any crime." On August 25, 1964, when this Assistant was known to be leaving the United States Attorney's Office, he goes on to state, defense counsel said "he was willing to show the prosecution documentary evidence that his client never received the allegedly unreported commission but that such commissions were tagged on to the cost of the machinery and given to other people." Although he then left the office a scant week or so later, this Assistant adds (correctly) that defense counsel "never produced such documents."

(5) The next Assistant had the case from November 18, 1964 to March 18, 1966, for the sixteen months rounding out the sixth and seventh years following return of the indictment. In a six-line affidavit, this affiant says he does not recall ever speaking to defense counsel or defendant about the case. He does not indicate that he did anything to move forward with a prosecution already so remarkably ancient.

(6) The next affidavit is that of an Assistant who had the case from March 23, 1966, to December 1, 1967. During these 20 months, he says, he saw references in the files to alleged "documents," spoke to defense counsel about them, and was told by the latter that he would have to "reacquaint himself with the case" before he could say anything. Defense counsel never fulfilled his promise to "get in touch," says this affidavit, and beyond that the affiant sayeth not

about why the case lay dormant for his tenure of over a year and a half.

(7) The present Assistant tells of inheriting the case in December 1967; calling defense counsel about the file references to "documents;" being told of the latter's lack of current familiarity with the case; granting postponements for counsel to refresh his recollection; and placing the case on the calendar in the late spring of this year when no further progress seemed likely through informal consultations.

In view of the disposition to be reached herein, it may be appropriate to say that the management of the case by the successor now in charge of it appears to have been wholly beyond reproach. This, in turn, is not meant to imply personal criticism of any particular individual whose docket may once have carried the case. What must be said, however, is that the affidavits serve, by the transparency of the purported explanations, to reveal a total lack of justification for the passage of over nine years between indictment and proposed trial.

It is not even necessary for this conclusion to rest upon, or weigh, the reply affidavit of defense counsel, who says he identified or produced certain "documents," never claimed to have any others, but did (and does) believe there were "leads" to exculpatory records which ought properly to be pursued by government investigators. Cf. Holland v. United States, 348 U.S. 121, 135–136, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Putting this to one side, the suggested "reason" for the delay is no reason at all. It is unlikely that any competent law student would consider it possible to fend off for years

the prosecution of an elderly defendant by vague, shifting, and unfulfilled promises of "documents." [3] Whatever law students might imagine, nobody could sit for more than a few hours in the criminal calendar part of this Court, listening to the knowledgeable and relentless pressure of vigorous prosecutors upon reluctant defense counsel, without recognizing the silliness of any such illusion. And, of course, the public is entitled to no less than such steady efforts to see that criminal justice should be as swift and certain as may be consistent with the demands of fair and orderly procedure.

Summarizing on the first two of our four relevant factors, the case is one of atrociously long delay wholly without any semblance of justification.

### Asserted prejudice to defendant

■ Where delay is as long and as groundless as that revealed here, prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years. See United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Hanrahan v. United States, 121 U.S.App.D.C. 134, 348 F.2d 363, 366–367 (1965); Frankel v. Woodrough, 7 F.2d 796, 798–799 (8th Cir. 1925); Petition of Provoo, 17 F.R.D. 183, 196–200 (D.Md.), aff'd per curiam, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). But defendant has more than this generalized kind of inference to support his motion.

It is agreed that the indictment centers upon alleged sums received by defendant as commission income, but not reported in his returns for the years in question, from three companies: Milwaukee Crane and Service Co., Victor Machinery Co.,

---

3. The Government's Memorandum of Law, p. 5 fn., cites as "interesting" the difference between the kinds of documents about which former Assistant Gordon (Nov. 18, 1959, to June 21, 1961) and former Assistant Todel (Sept. 13, 1961, to Sept. 4, 1964) say they were told. It is not necessary to decide what they were told. If there was such a difference, the discrepancy serves to highlight rather than to mitigate the totally unjustifiable character of the delay in the prosecution.

and Simmons Machine Tool Corp. As reported in the Government's opposing papers, the alleged sums and payors were as follows:

|              | Simmons      | Victor      | Milwaukee   |
| ------------ | ------------ | ----------- | ----------- |
| 1952—$ 12,938.00 | $ 11,988.00 | $ 950.00 |             |
| 1953— 27,251.80 | 16,000.00   | 11,251.80   |             |
| 1954— 60,000.00 | 37,500.00   |             | $22,500.00  |
| 1955— 42,500.00 | 10,000.00   |             | 32,500.00   |
| 1956— 32,100.00 | 32,100.00   |             |             |
| Totals $174,789.80 | $107,588.00 | $12,201.80 | $55,000.00 |

It is undisputed that defendant did business with these companies during the pertinent years and that, apart from all the memories and records that may be lost during intervals of from twelve to sixteen years, people who presumably knew many pertinent facts have died. Thus, as to the Simmons Corp., it is asserted by the defense that defendant "dealt primarily with Mr. Charles Simmons, Sr., and to some extent with his son, Charles Simmons, Jr." At various times in 1957, while defendant's tax liability was under investigation, Simmons, Sr., is said to have assured defendant and his accountant (who makes an affidavit to this effect) that the Simmons Corp. had never paid defendant any commissions and that corporate book entries appearing to reflect such commissions were erroneous. On October 8, 1963, over four years after the indictment, the elder Simmons died.

This is of little or no moment, the Government urges, because of "the Government's intention to prove that it was Simmons, Jr. who negotiated the commissions with Mann and who arranged their payment." Moreover, the prosecution submits affidavits of a revenue agent and of Simmons, Jr., purporting to rebut by different hearsay what the elder Simmons knew or said about the subject of commissions. The younger Simmons swears that his father "on a large number of occasions adverted to commissions paid by Simmons Machine Tool Corp. to Theodore Mann." The agent swears to similar effect.

In short, on this important subject (Simmons Corp. being by far the largest single source of allegedly unreported commissions), it emerges as undisputed that the senior Mr. Simmons had highly pertinent knowledge about the truth which was available for some four years after the indictment but is now forever lost.

Other deaths are said to have affected the ability of the aged defendant to defend effectively at this late date. One Victor Segal, chief operating officer of Victor Machinery Co., died in October, 1967, eight years and seven months after the indictment. In December of 1964, defendant's then counsel died. Both deaths were severe blows, it is now claimed, because Segal had told defendant, in the presence of the latter's now deceased attorney, that all of the relevant corporate records had been destroyed.

This is of no consequence, the Government responds, because Segal was actually the man through whom the Government was planning to prove the approximately $12,000 in commissions alleged to have come from Victor Machinery in 1952 and 1953. "With his death," says the affidavit of government counsel, "there will be no proof on those items. Thus Mann's inability to call him and Levy as defense witnesses is of no significance since there will be nothing to defend." It is of some secondary interest that the elimination of this substantial amount from the accusations seems never to have been mentioned to the defense until now. More importantly, this is another material subject on

which the parties agree that the lapse of time has made proof impossible.

■ Beyond the unquestioned loss of memories erased by deaths, defendant points out that he himself has reached the advanced age of 77; that the events in question date back as much as 16 years; that his own memory and the recollections of people younger and older than himself must surely have dimmed over the long intervals with which we are concerned. Again, the Government finds exaggeration and alarmism in the defense position. The case, argues the prosecution, "turns on the question of whether over a five-year period, the defendant was paid over $150,000. Recollection of such a fact, is nowhere near as amenable to erosion as, for example, identification of a defendant, which * * * is not in issue." But this is too speedy an oversimplification. The case is not a suit for unpaid taxes. The defendant is charged with "the climax of [a] variety of sanctions," "the serious and inclusive felony defined to consist of *willful* attempt in any manner to evade or defeat the tax." Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943) (emphasis added). The government must prove an "evil motive and want of justification in view of all the financial circumstances of the taxpayer." Id., at 498, 63 S.Ct. at 368. Such proof, bearing upon the defendant's state of mind many years ago, is a critical and difficult subject. Cf. Sansone v. United States, 380 U.S. 343, 350–351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); James v. United States, 366 U.S. 213, 221, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961); Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Murdock, 290 U.S. 389, 394–396, 54 S.Ct. 223, 78 L.Ed. 381 (1933). Considering all the varied, uncertain, potentially subtle factors which may affect a subject so compendious, it is obviously not one on which a defendant nearing 80 is likely, 12 to 16 years after the alleged transactions, to be most vividly and effectively able to assist in his own defense.

To summarize, then, on the question whether the delay has hurt the defense, this is not a point to be resolved with mathematical certainty. What is clear, however, apart from the weighty presumption of prejudice where the delay is as long as it has been in this case, is that defendant's specific claims of prejudice are substantial. The quarrel about the degree and kind of damage from the death of Simmons, Sr., is incapable of satisfactory resolution by weighing the competing offers of hearsay. But we can know that the search for the truth has been severely hampered and that, on this and other aspects, defendant has demonstrated "the likelihood, or at least reasonable possibility, that [he] has been prejudiced by the delay." Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684, 687 (1966).

■ This is certainly not a case where the "claim of possible prejudice * * * is unsubstantial, speculative and premature." United States v. Ewell, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed. 2d 627 (1966); see also United States v. Research Foundation, Inc., 155 F.Supp. 650, 655 (S.D.N.Y.1957). It is conceivable, of course, that putting the defendant to trial would result, *inter alia*, in diminishing the appearance of prejudice resulting from the lengthy delay. The Government suggests, in fact, that we follow the cases where motions like the present one were denied subject to renewal and possibly altered disposition upon the brighter illumination afforded by a trial. E. g., United States v. Gladding, 265 F. Supp. 850 (S.D.N.Y.1966); United States v. Algranati, 239 F.Supp. 116 (S.D.N.Y. 1965); United States v. Research Foundation, Inc., 155 F.Supp. 650 (S.D.N.Y. 1957). Cases like those cited involved pretrial motions which were deemed *insufficient* but possibly capable of being buttressed at trial. The fact remains that the burden and suffering of a trial are evils in themselves. "[T]he purpose of the provision against an unreasonable delay in trial is not solely a release from imprisonment in the event of acquittal, but also a release from the harassment

of a criminal prosecution and the anxiety attending the same * * *." Frankel v. Woodrough, 7 F.2d 796, 798–799 (8th Cir. 1925). The Sixth Amendment, at least as implemented by Rule 48(b), forbids us to proceed to trial where a defendant has made, and the Government has not adequately answered, the requisite showing. It is not open to the prosecution in such circumstances to propose that there be a trial at which it may possibly rebut the demonstration of "unnecessary delay" for which the Rule commands dismissal of the indictment.

### Waiver

This fourth and last factor presents what may be the stickiest facet of the problem. As the chain of affidavits by Assistants attests, and as is not disputed, defense counsel never came forward to announce he was "ready" for trial, and never moved to dismiss the indictment for failure to put his client to trial until after the prosecution had proceeded finally toward the trial stage. There are decisions which can be read to mean that such inaction or acquiescence by a defendant effects a "waiver" of his right to a speedy trial. But a full view of the pertinent authority would seem to permit, and the Government appears to urge, no such simplistic analysis.

As has been noted, controlling decisions state repeatedly the need in this area to appraise all the pertinent circumstances and, specifically, the four factors herein considered, only one of which is "waiver." If this fourth element could by itself defeat the defendant in every case, it would certainly not be aptly described as being merely one of four "factors" to be weighed together.

Decisions that go off on "waiver" have reserved judgment on some open-ended class of cases where this factor would be insufficient to overcome a showing of long, unjustified, and prejudicial delay. See United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958); United States v. Algranati, 239 F.Supp. 116, 117 (S.D.N.Y.1965). Decisions based upon the other three factors, denying defense motions without reaching the question of waiver, serve also to repel the suggestion that the factor of waiver should or may defeat a claim under the Speedy Trial Clause even though the other circumstances—length of delay, lack of justification, and prejudice—all weigh powerfully against the prosecution.

It is a simple matter to establish a so-called waiver in the form of failure to demand a prompt trial or to make an early motion to dismiss. If that alone could be decisive in every case, it would be at least a needlessly lavish use of judicial energies to bypass it and work through a detailed appraisal of all the other circumstances as grounds for decision. Cf., e. g., United States v. Simmons, 338 F.2d 804 (2d Cir. 1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965); United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (2d Cir. 1963).

On deeper grounds of principle, it is difficult to accept that interests so "fundamental," Klopfer v. State of North Carolina, 386 U.S. 213, 223, 226, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and so pervasive as those served by the right to a speedy trial are enforceable by judicial sanctions only at the behest of defendants who take the relatively unlikely step of demanding an early trial. All those concerned with the administration of justice are commanded to expedite criminal proceedings "as far as practicable." Fed.R. Crim.P. 50. The reasons for the command are familiar and heavy with the weight of long history. See, e. g., Klopfer v. State of North Carolina, supra, at 223–224, 87 S.Ct. 988; United States v. Ewell, supra, 383 U.S. at 120, 86 S.Ct. 773. The interests in maximum speed consistent with fairness, in fresh memories likely to approach full accounts of the facts, in prompt vindication and relief of the innocent, and in swift punishment of the guilty—such concerns are matters of broad public moment quite transcending the balance of personal advantage that understandably guides the steps of the individual defendant. It is commonly understood that the defendant will hesitate to

disturb the hushed inaction by which dormant cases have been known to expire. See, e. g., United States v. Wai Lau, 329 F.2d 310, 312 (2d Cir. 1964), cert. denied, 379 U.S. 856, 85 S.Ct. 108, 13 L.Ed.2d 59 (1965). There is no comparable ground —at least no justification—for ambivalence in the prosecutor's office about performance of the unquestioned duty to implement the right to a speedy trial. See Hanrahan v. United States, 121 U.S.App. D.C. 134, 348 F.2d 363, 367 (1965); Pitts v. State of North Carolina, 395 F.2d 182, 185–186 (4th Cir. 1968); United States v. Dillon, 183 F.Supp. 541, 543 (S.D.N.Y. 1960). And, of course, the duty should be felt no less lightly by the judges. Given this distribution of responsibility, and given the nature of the underlying concerns, it would be barren and rocky doctrine to hold that a defendant's "waiver" could make it proper under the Sixth Amendment to hold a crimnial trial 16 years after the events, nine years after the indictment, when important witnesses have died, and where there is not even a plausible reason suggested for the failure of the prosecution to move ahead long ago.

■■ While the present motion will be granted, therefore, by force of the Sixth Amendment itself, an alternative ground should be mentioned and recorded as possible foundation for this result. It has been held that Criminal Rule 48(b), by providing for dismissal for "unnecessary delay," goes beyond the Sixth Amendment and supplies broader grounds for the exercise of discretion in dismissing indictments for want of prosecution. United States v. Research Foundation, Inc., 155 F.Supp. 650, 654 (S.D.N.Y. 1957), citing authorities; see also Hanrahan v. United States, 121 U.S.App.D.C. 134, 348 F.2d 363, 368 (1965); 8 Moore, Federal Practice, ¶ 48.03[1] (1968); cf. Pollard v. United States, 352 U.S. 354, 368, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957) (dissenting opinion). It has also been said that the Rule "provides for enforcement of [the] right" given by the Sixth Amendment. Pollard, supra, 352 U.S. at 361 n. 7, 77 S.Ct. 481 (majority opinion). The latter statement need not be read, of course, to mean "enforcement" of the constitutional right, *and nothing more*. But it does point to a still possibly open question whether there is or should be—and, if so, how to define—an area of "discretion" in which judges ought properly to dismiss indictments for delays which pass the test of the Sixth Amendment.[4] There may be room for such speculation at some other time even though the Government concedes in the case at bar the existence of such discretion.

In the light of the concession, however, and in all the circumstances outlined above, there is no need to pursue the inquiry here. Insofar as the matter lies in discretion, the views already expressed lead to the granting of defendant's motion because (to paraphrase) the delay has been shown to be "[un]justifiable, * * * unduly long, and * * * prejudicial * * *." United States v. Simmons, supra, 338 F.2d at 808.

Accordingly, on either or both of the alternative grounds stated, defendant's motion is granted. The indictment is dismissed.

So ordered.

---

4. Superficially at least, there is a look of paradox about the thought that facts amounting to a waiver of the constitutional right, though "we indulge every reasonable presumption against the waiver of fundamental rights," Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942), do not waive the right to "enforcement" given by the Rule.