**UNITED STATES of America**

v.

**Sydney L. ALBERT et al., Defendants.**

**No. 60 Cr. 249.**

United States District Court,
S. D. New York.

Dec. 28, 1970.

Whitney N. Seymour, Jr., U. S. Atty., S. D. N. Y. by Daniel J. Sullivan, Asst. U. S. Atty., for the United States.

Sidney Kramer, New York City, for defendant Joseph Hewitt.

Henry G. Singer, Brooklyn, New York, for defendant Larry Knohl.

Owen & Turchin, by Richard Owen, New York City, for defendant Sydney L. Albert.

Joseph Abrams, pro se.

## OPINION

TYLER, District Judge.

This indictment, 60 Cr. 249, containing 45 counts, was filed on March 14, 1960. Count 1 charged that defendants Sydney Albert, Joseph Abrams, Joseph Hewitt and Larry Knohl, among others, manipulated the stock of Bellanca Aircraft Corporation ("Bellanca") on the American Stock Exchange ("AMEX") from March 1955 to June 1956. Count 2 charged the same defendants with conspiracy to manipulate Bellanca stock. Count 3 charged defendant Albert and the Finance Company of Pennsylvania[1] with the sale of unregistered Bellanca stock. Counts 4 through 35 charged Albert and Abrams with specific sales of unregistered Bellanca stock. Counts 36 through 39 charged defendant Albert with failing to file a required report with AMEX. Counts 40 through 44 charged defendant Albert with perjury in testifying before the Securities and Exchange Commission ("SEC"). Finally, Count 45 charged defendant Hewitt with perjury before the SEC.

On defendants' motion for severance, by order dated August 3, 1960, Judge Weinfeld broke the case into four groups: a) Counts 1, 2 and 4–39; b) Count 3; c) Counts 40–44; and d) Count 45. So far as can be determined,[2] Judge Weinfeld also directed that the four groups of counts be tried separately.

Count 45, the perjury count against Joseph Hewitt, therefore, was tried in December, 1964 before Judge Edelstein sitting without a jury. Hewitt was acquitted. This trial covered much of the same evidence as would necessarily be relied upon at a trial of the other counts.

From September 4, 1963 through February 16, 1964, the undersigned presided over the trial of United States v. Abrams et al., 61 Cr. 332 in which Albert, Abrams and Knohl were defendants. *Abrams* involved charges relating to the illegal sale of unregistered stock of a corporation named Automatic Washer, Inc. Both the time periods of and principal actors in the Bellanca and Automatic Washer stock distributions overlap to a considerable degree. In addition, some evidence of the Bellanca stock transactions was admitted against Albert, Abrams and Knohl at the earlier trial. See United States v. Abrams, 357 F.2d 539, 543–547 (2d Cir. 1966). Knohl was acquitted by the jury of the charges in *Abrams*; Albert and Abrams were found guilty of certain counts and sentenced to concurrent terms of three and five years respectively.

In the period of almost 6 years since Hewitt was tried in December, 1964, the office of the United States Attorney has made no efforts to bring the other charges in this indictment to trial. Indeed, it was the court, not the prosecutor, which in August and September, 1969[3] discovered and called attention to this old case by requesting the then United States Attorney to decide whether to file a nolle prosequi or move the case for trial. After this request, it is true, a new United States Attorney took office and necessarily required time to organize his staff and look into pending indictments, including this one. Thus, it is not surprising that further time elapsed until September, 1970 when the court finally demanded that a decision on this case be made. As a result, the court was informally advised in early

---

1. The government has promised to file a nolle prosequi as to defendant Finance Company of Pennsylvania but to date has not fulfilled its promise.

2. A minor but interesting difficulty in this case is that much of the court file has been lost, including the above mentioned memorandum of Judge Weinfeld. Time has taken its toll in several ways.

3. For some reason, the docket sheet in the clerk's office does not indicate these events; however, my court minutes do in connection with the individual calendar project assignment to me of this case effective on October 1, 1969.

October, 1970 that the government had decided to move the case for trial. There then ensued further delays and difficulties in notifying defendants and counsel. Finally, on October 23, 1970, all parties except Samuel Golub and Shiah Arsham appeared in person and by counsel.[4]

Not surprisingly, after the October 23 appearance, the defendants moved to dismiss this indictment pursuant to the Sixth Amendment of the Constitution and Rule 48(b), F.R.Cr.P. They claim that the government has failed to prosecute this case within a reasonable time, thus depriving them of their right to a speedy trial.[5]

The standards for evaluating whether or not a delay has been "unreasonable" or unconstitutional have evolved somewhat since United States v. Lustman, 258 F.2d 475 (2d Cir. 1958) which determined that defendant's failure to demand an early trial amounted to a waiver of his Sixth Amendment right. In United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (2d Cir. 1963), dealing with rights under the Fourteenth Amendment and later, under the Sixth Amendment, in United States v. Simmons, 338 F.2d 804 (2d Cir. 1964) cert. denied 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965), a federal case, the circuit court stated that:

> "[f]our factors are relevant to a consideration of whether denial of a speedy trial assumes due process [or Sixth Amendment] proportions: the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant." 338 F.2d at 807, quoting United States ex rel. Von Cseh, 313 F.2d at 623.

In this case, the delay of trial from March 14, 1960 to the present is, without more, a powerful support for defendant's motions. More than ten years have passed since the indictment was filed; in excess of fifteen years have elapsed since the critical indictment events allegedly took place.

No reason for the delay appears in the record; in fact, after the Hewitt trial, five years passed without so much as an entry on the docket sheet. Also, though the protracted Automatic Washer trial and the subsequent Hewitt perjury trial may have excused pressing this case for trial before early 1965, the government, significantly, has offered no reasons or excuses for the delay since that time. See, generally, Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 2d 1 (1967).

Turning to the question of prejudice, "[w]here delay is as long and as groundless as that revealed here, prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years." United States v. Mann, 291 F. Supp. 268, 271 (S.D.N.Y.1968). To buttress what is indeed a strong presumption, by letter or affidavit various of these defendants have submitted specific allegations of prejudice. Hewitt states that two witnesses whom he might have called, Franklin Payer and George C. Summers have died. The government counters that since Payer died early in the decade, his absence has no bearing on the question of a speedy trial now. Additionally, the prosecution has submitted affidavits suggesting that the testimony of these two witnesses would have been unfavorable to Hewitt. Both these facts have little bearing on what is the essential problem here—the testimo-

---

4. Arsham presumably would be severed and appear as a prosecution witness at trial; Golub died in November, 1967.

5. Albert, Abrams and Knohl additionally urge that since evidence relating to the "Bellanca" indictment was relied upon in the "Automatic Washer" case, this second trial places them twice in jeopardy. In a similar vein, Hewitt argues that because of his acquittal of the perjury charge, the government is estopped from relitigating the issues of conspiracy and manipulation. Because of the disposition herein, it is unnecessary to pass on these contentions.

ny of these men is lost. Abrams has submitted a list of eighteen persons who have died during the past ten or fifteen years. He states that all were familiar with one or more aspects of his Bellanca dealings and would have been called as witnesses. He also states that most of his books and records relating to the Bellanca transactions are missing.

Larry Knohl is presently serving a five year prison sentence for an unrelated offense. He suffered a stroke in 1965; his health is precarious.

Albert has submitted no specific evidence of prejudice; however, to the knowledge of the court by reason of other litigation in this court, his medical history, particularly since his conviction in the earlier case before me, has been poor.

Though perhaps not as detailed as it might be after trial, the cold record, supplemented by such showings of defendants as are apparently within their present resources, adequately demonstrates prejudice without substantial refutation or explanation by the United States.

Turning finally to the question of waiver and assuming continuing validity in this circuit of at least some vestiges of the Lustman rule, the latter has been tempered by the aforementioned "interrelated factors test" of *Von Cseh* and *Simmons*. See also United States v. Mann, *supra* and United States v. Chin, 306 F.Supp. 397 (S.D.N.Y. 1969). Two of the factors, as mentioned, clearly exist—lengthy delay and no explanation therefor. As stated heretofore, the third factor of prejudice virtually must be presumed on this record; in any case, the affidavits of defendants tend to support this presumption. Waiver by defendants, the fourth factor, is at least superficially established by the conceded fact that defendants made no attempts to move or press this case for trial. Other considerations, however, suggest that this fact standing alone does not, in the circumstances of this case, constitute legal waiver as meant in *Lustman, Von Cseh, Simmons* and their progeny.

First, there were persuasive, practical reasons for experienced defense counsel to refrain from pressing for trial and, indeed, to assume that this case would never be tried. The mere passage of time after the conclusion of the Hewitt perjury trial, for example, may well have lulled defendants and their lawyers into believing that this case would be allowed to die. Perhaps more important, I share the recollection of one of defense counsel that during the earlier trial of United States v. Abrams et al. one of the prosecutors indicated in words or substance that should convictions be obtained in that case, this case in all probability would never be brought to trial.[6] In sum, I do not believe that the totality of the circumstances here requires or even permits a finding of waiver. See United States v. Dillon, 183 F.Supp. 541 (S.D.N.Y.1960).

Second, even if it be said that failure to press for trial does constitute waiver, waiver is only one of four factors "to be considered together because they are interrelated." *Von Cseh*, 313 F.2d at 623. Where as here the first three factors of *Von Cseh*—the length of the delay, the lack of any explanation therefor and prejudice to the defendants—are clearly and indeed overwhelmingly established, it is reasonable if not necessary to conclude that they override and outweigh defendants' failure to formally move for a speedy trial.

Finally, under the presumably broader limits of discretion conferred upon the trial court by Rule 48(b), F.R.Cr.P., see United States v. Roberts, 293 F.Supp. 195, 198 (S.D.N.Y.1968), I determine

---

6. In fairness, I note that my examination of the voluminous (in excess of 12,000 pages) *Abrams* trial record has failed to cast up a specific reference to such a statement; however, certain portions of that trial record in my chambers are missing.

that there has been "unnecessary delay" in bringing these defendants to trial.

The motions to dismiss all open counts in this indictment are granted and the case is closed.

It is so ordered.