**UNITED STATES of America**

**v.**

**Ira BLAUSTEIN, Defendant.**

**UNITED STATES of America**

**v.**

**Harry S. STONEHILL and Ira Blaustein, Defendants.**

**Nos. 66 Crim. 604, 67 Crim. 667.**

United States District Court,
S. D. New York.
Jan. 19, 1971.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for the U. S.; Richard A. Givens, Asst. U. S. Atty., of counsel.

Williams & Connolly, Washington, D. C., for Ira Blaustein; Vincent J. Fuller, Frank X. Grossi, Jr., Washington, D. C., of counsel.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for Harry S. Stonehill; Simon H. Rifkind, Jay H. Topkis, George P. Felleman, Neil H. Cogan, New York City, Trammell, Rand & Nathan, Hans A. Nathan, Washington, D. C., of counsel.

## MEMORANDUM

BONSAL, District Judge.

Defendants Harry Stonehill and Ira Blaustein move to dismiss the within indictments as against them on the ground that they have been denied a speedy trial.

In a one-count indictment filed on August 1, 1966 (the 1966 indictment), defendant Blaustein is charged with wilfully attempting to evade and defeat a large part of the Federal corporate income tax due and owing by Universal New York, Inc. (Universal) for the fiscal year ending March 31, 1960 in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2, by filing, or causing to be filed, a false and fraudulent return which understated the corporate income tax due and owing by the sum of $62,433.78.

In a four-count indictment filed on July 26, 1967 (the 1967 indictment), both defendants are charged in Count One with conspiring to violate 26 U.S.C. § 7201 and to defraud the United States in connection with the corporate income tax returns of Universal filed for the fiscal years ending March 31, 1959, 1960, and 1961—in violation of 18 U.S.C. § 371. Five of the overt acts alleged to have been committed in furtherance of the conspiracy are alleged to have taken place in 1958; three in 1959; one in 1960 and two in 1961. The remaining three counts in the 1967 indictment charge both defendants with attempting to evade and defeat a large part of the Federal corporate income tax due and owing by Universal for the fiscal years ending March 31, 1959, 1960, and 1961 in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2, by filing, or causing to be filed, false and fraudulent returns which understated the corporate income tax due and owing for the fiscal years 1959, 1960, and 1961 by the sums of $25,174.85, $62,433.78, and $30,750.61, respectively. Count Three of the 1967 indictment is identical to the 1966 indictment, with the exception of the inclusion of defendant Stonehill as a defendant.

During the years embraced by the indictments (1958–1961), defendant Blaustein was the General Manager, and both defendants were shareholders, of Universal, which was located in New York. During these years, Universal did business with various Philippine companies in which defendant Stonehill had an interest.

On November 2, 1966, defendant Blaustein pleaded not guilty to the 1966 indictment, and on December 12, 1966, he moved to dismiss the 1966 indictment on the ground that it was returned more than six years after the filing of the tax return in question, for a bill of particulars, and for discovery and inspection. On September 20, 1967, both defendants pleaded not guilty to the 1967 indict-

ment, and the 1966 indictment was marked off the calendar. On October 19, 1967, defendant Blaustein moved to dismiss the 1967 indictment on the grounds of the statute of limitations and unnecessary pre-indictment delay in violation of his right to a speedy trial; for suppression of evidence; for a bill of particulars; and for discovery and inspection.[1] Defendant Stonehill made similar motions on October 25, 1967. All the motions were argued before Judge Frankel on February 28, 1968, and the 1966 and 1967 indictments were marked off the calendar on March 29, 1968.

Judge Frankel's decisions on the several motions were given in open court on February 28, 1968, and by memorandum and order filed on May 9, 1968.

As to Blaustein:

Judge Frankel dismissed Counts Two and Three of the 1967 indictment on the ground that the statute of limitations had run, and denied his motion to dismiss Counts One and Four of the 1967 indictment without prejudice to renewal at trial.

As to Stonehill:

Judge Frankel denied defendant Stonehill's motion to dismiss the 1967 indictment.

As to both defendants:

Judge Frankel denied the remaining motions, including the motions to dismiss the 1967 indictment because of undue delay in returning it. The motions to suppress as evidence materials seized in the Philippines in 1962 were denied, without prejudice to renewal shortly in advance of trial. Judge Frankel directed the Government to serve a bill of particulars and to produce certain enumerated documents for inspection and copying. Included among the documents to be produced were books, records, correspondence and memoranda, seized in the Philippines, which the Government

---

1. Defendant Blaustein asserts that "these motions implicitly encompassed the 1966 indictment since the same charge was reintroduced in the 1967 indictment."

"intends to use in connection with this trial."

A bill of particulars was served on the defendants on June 5, 1970, 25 months after Judge Frankel's order, and the Government produced the Philippine documents for inspection in August, 1970, 27 months after Judge Frankel's order.

Awaiting trial are the 1966 indictment and Counts One and Four of the 1967 indictment against defendant Blaustein, and the 1967 indictment against defendant Stonehill.

On November 9, 1970, the defendants made the instant motions to dismiss the remaining charges in the 1966 and 1967 indictments against them on the ground that they have been denied a speedy trial. Defendant Blaustein's motion was made pursuant to Rule 12(b), F.R.Cr.P., "on the ground that defendant has been denied his right to a speedy trial guaranteed by the Sixth Amendment of the Constitution[2] and by Rule 48(b) of the Federal Rules of Criminal Procedure."[3] Defendant Stonehill's motion was made pursuant to Rule 48(b), F.R.Cr.P., "on the ground that he has been denied a speedy trial in violation of his rights guaranteed by the Fifth and Sixth Amendments." The court heard argument on the motions on January 11, 1971, at which time the court stated it would grant the defendants' motions pursuant to Rule 48(b), F.R.Cr.P., at the time it filed this Memorandum.

The right of an accused to a speedy trial is "one of the most basic rights preserved by our Constitution." Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); Smith v. Hooey, 393 U.S. 374, 375, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Moreover, the right to a speedy trial is provided by Rule 48(b), F.R.Cr.P. Defendants' motions are based both on the Sixth Amendment and Rule 48(b).

The cases recognize that the Sixth Amendment guarantee and a defendant's right under Rule 48(b) are not coextensive. United States v. DeLeo, 422 F.2d 487, 495 (1st Cir.), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); Hodges v. United States, 408 F.2d 543, 548–549 (8th Cir. 1969) and cases cited therein. "Rule 48(b) 'is a restatement of the inherent power of the court to dismiss a case for want of prosecution.' And that power is not circumscribed by the Sixth Amendment." Mann v. United States, 113 U.S.App.D. C. 27, 304 F.2d 394, 398, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). See also, 8A Moore, Federal Practice ¶ 48.03[1] (1968). The protection invoked guards only against unnecessary delay. United States v. Simmons, 338 F.2d 804, 806 (2d Cir. 1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965).

In considering motions to dismiss pursuant to Rule 48(b), the court is "governed by the standards of United States ex rel. Solomon v. Mancusi, 412 F.2d 88 (2d Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969)." United States v. Fitzpatrick, 437 F.2d 19 at 26 (2d Cir. 12/24/70). See also, United States v. Garelle, 438 F.2d 366 at 369 (2d Cir. 10/13/70). As stated in United States ex rel. Solomon v. Mancusi, supra 412 F.2d at 90.

"This circuit has looked to four factors in deciding whether there has been a violation of the right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the prejudice to the defendant; and (4) waiver by the defendant."

"These factors are to be considered together because they are interrelated," United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963).

■ With respect to the first of these factors, the length of the delay, 3½

---

2. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

3. " * * * [I]f there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

years have elapsed since the 1967 indictment, and 4½ years have passed since the 1966 indictment. In United States v. Lustman, 258 F.2d 475, 477 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), the court held that a period of approximately four years during which nothing was done to bring the case to trial was an undue delay. Here, the alleged crimes occurred as early as 1958, and the 1967 motions to dismiss the indictment for unnecessary pre-indictment delay certainly put the Government on notice to proceed expeditiously to trial.[4] However, the Government made no attempt to bring the defendants to trial until June 5, 1970, when the Government filed a bill of particulars 25 months after Judge Frankel's order of May 9, 1968. The documents which were seized in the Philippines in 1962 were not produced by the Government until August, 1970, 27 months after Judge Frankel directed the Government to produce them.

The Government conceded at argument that the delay in filing a bill of particulars for 25 months after Judge Frankel's order was due to "sheer inadvertence." With respect to the 27-month delay between Judge Frankel's order and production of the documents seized in the Philippines, the Government points out that defendant Stonehill moved to suppress the same documents in a civil tax action involving the same issues in the Southern District of California, which resulted in an extensive evidentiary hearing and a ruling denying suppression on October 16, 1967, affirmed on appeal on December 9, 1968, and as to which certiorari was denied on June 16, 1969. United States v. Stonehill, 274 F.Supp. 420 (S.D.Cal.1967), aff'd 405 F.2d 738 (9th Cir. 1968), cert. denied, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969). The Government argues:

"It seemed logical for the Government in this District to await the decision of the Court of Appeals and the Supreme Court in 1968 and 1969 before making a final decision as to whether to use in the case in this Court any of the seized evidence challenged in the suppression motion. In the event that suppression had been ordered in California, by the 9th Circuit or by the Supreme Court, the Government would have elected not to use the seized evidence in this District. One of the items called for in the discovery order of this Court was any items seized in the Philippines which the Government planned to use."

The asserted reason is no justification for the unnecessary delay in this case. In his memorandum and order of May 9, 1968, which denied the motions to suppress the materials seized in the Philippines without prejudice to renewal shortly in advance of trial, Judge Frankel directed that a bill of particulars be filed and documents produced. Under the circumstances, the Government should have proceeded expeditiously with the case by filing a bill of particulars, producing the required documents, and opposing defendants' motions for suppression of the Philippine materials if renewed shortly in advance of trial. Moreover, the Government did not produce the Philippine documents until August, 1970, 14 months after the Supreme Court's denial of certiorari.

The Government's contention that the defendants must share the responsibility for the delay because "defense counsel not only did not want a trial of the indictment, but spoke consistently of reasons why a trial should not be held" is without merit. In Dickey v. Florida, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970), Chief Justice Burger stated for the Court:

"Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the

---

4. "While justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed."

Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959).

charging authority is to provide a prompt trial." (Footnotes omitted.)

There has been no showing by the Government that the case could not have been tried many years ago. It really comes down to the fact that the Government did not push the case to trial.

■ Prejudice to the defendants because of the long unjustified delay in bringing this case to trial "may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years." United States v. Mann, 291 F.Supp. 268, 271 (S.D.N.Y. 1968). *See also,* United States v. Blanca Perez, 310 F.Supp. 550, 551 (S.D.N.Y. 1970).

■ Apart from the presumption of prejudice in this case, the defendants' specific claims of prejudice are substantial. The Government will proceed on the "specific item theory"—i. e. the Government will attempt to establish the omission of specific items of income in Universal's tax returns. The Government will present documentary evidence in the form of the records of Universal and its payors, dating back to 1958–1961, to establish as to each fiscal year, the items, amounts, dates of receipt, and sources of the income alleged to have been received by Universal, but not reported as income in Universal's returns. These items include sums received from various American companies as (a) commissions equal to a percentage of the sales price of American tobacco sold to the Philippine companies; (b) ocean freight differentials on the shipment to the Philippines of the American tobacco; and (c) sums in excess of the true freight costs of the shipment to the United States of Philippine tobacco purchased by the American companies (freight rebates). These items would appear to be income to Universal unless the defendants can establish that they were not. This imposes a heavy burden where transactions over 10 years old are involved. With the passage of time, the written word assumes greater authority and becomes more difficult to explain. As stated by Justice Brennan in his concurring opinion in Dickey v. Florida, *supra* 398 U.S. at 42, 90 S.Ct. at 1571:

> "The passage of time by itself, moreover, may dangerously reduce [the accused's] capacity to counter the prosecution's charges. Witnesses and physical evidence may be lost; the defendant may be unable to obtain witnesses and physical evidence yet available. His own memory and the memories of his witnesses may fade."

On the specific facts of this case, actual prejudice to the defendants as a result of the unnecessary delay is obvious.

The defendants point out that three witnesses who might have been able to explain these items died during the period of the Government's delay.

Clifton E. Sutherland died in July, 1970 at the age of 75. He was the former Manager of Far East Operations for Universal Leaf Tobacco Company (Universal Leaf). Universal Leaf was the source of much of the disputed income. The delayed bill of particulars states that nearly 50% of the alleged payments of commissions and ocean freight differentials to Universal, and all of the alleged payments of freight rebates to Universal, were received from Universal Leaf, and that there were several written and oral agreements allegedly made in 1958 between defendant Blaustein and Mr. Sutherland.

Gus Messing, Jr., died on April 5, 1969. He was the former President of Frederick Henjes, Jr., Inc., the freight forwarder in the transactions. The defendants assert that he was instrumental in arranging for the freight rebate, and "would have explained the freight rebate [and] would have corroborated the fact that all transactions by Universal-New York were made on behalf of the Philippine principals * * *."

All or most of the funds credited to the Philippine companies by Universal were forwarded to Dr. E. Michel Meyer in Switzerland. Dr. Meyer, an attorney, died on February 25, 1969. Among the Philippine documents are some addressed to or received from, or which refer to, Dr. Meyer, and defendants say that due to Dr. Meyer's death, defendants "can neither interrogate him as to the genuineness of the documents purportedly emanating from him nor will he be able to testify and explain their contents." The Philippine documents were not produced for the defendants' inspection until 18 months after Dr. Meyer's death, though Judge Frankel ordered them produced nine months before he died.

The death of these potential witnesses during the period of the Government's unnecessary delay can reasonably be presumed to aggravate the prejudice to the defendants resulting therefrom.

As stated by Chief Justice Burger in Dickey v. Florida, *supra* at 37, 90 S.Ct. at 1568:

> "The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality on the need to have charges promptly exposed. *If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case*, as is the defendant's right, the time to meet them is when the case is fresh." (Emphasis added.)

The search for truth has been severely hampered by the long unjustified delay in this case, and the defendants have demonstrated that they have been prejudiced by the delay. Under the circumstances, "[i]t is not open to the prosecution * * * to propose that there be a trial at which it may possibly rebut the demonstration of 'unnecessary delay' for which the Rule [48(b)] commands dismissal of the indictment." United

States v. Mann, *supra* 291 F.Supp. at 274.

■ The Government contends that the defendants, at all times represented by counsel, never made any request for an early trial, thereby waiving their rights. However, as stated by Justice Brennan in Dickey v. Florida, *supra* 398 U.S. at 49–50, 90 S.Ct. at 1574–1575 (concurring opinion):

> "The view that an accused loses his right to a speedy trial by silence or inaction is open to question * * *.

> \* \* \* \* \* \*

> "The accused has no duty to bring on his trial. He is presumed innocent until proved guilty; arguably, he should be presumed to wish to exercise his right to be tried quickly, unless he affirmatively accepts delay. The government, on the other hand, would seem to have a responsibility to get on with the prosecution, both out of fairness to the accused and to protect the community interests in a speedy trial. Judge Weinfeld of the District Court for the Southern District of New York has observed, 'I do not conceive it to be the duty of a defendant to press that he be prosecuted upon an indictment under penalty of waiving his right to a speedy trial if he fails to do so. It is the duty of the public prosecutor, not only to prosecute those charged with crime, but also to observe the constitutional mandate guaranteeing a speedy trial. If a prosecutor fails to do so, the defendant cannot be held to have waived his constitutional right to speedy trial.' United States v. Dillon, 183 F.Supp. 541, 543 ([D.C.] 1960)."

The right to a speedy trial is a fundamental one, and courts should indulge "every reasonable presumption against waiver" of fundamental constitutional rights. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

Defendants moved in 1967 to dismiss the 1967 indictment on the ground of unnecessary pre-indictment delay. They moved at the same time for a bill of particulars and for discovery. There is no showing that they waived their rights to a speedy trial.[5] On the contrary, as stated by Judge Tyler in United States v. Chin, 306 F.Supp. 397, 400 (S.D.N.Y. 1969):

> "I think it reasonable to presume that a defendant with an order outstanding against the government to produce a bill of particulars by which he will be more fully 'informed of the nature and cause of the accusation' (U.S. Const. Amendment VI) has not waived any rights, and the burden lies on the prosecutor to obey the orders of the court and move the case forward to its next stage."

On January 5, 1971, the Circuit Council of the Second Circuit, in the exercise of its supervisory power over the administration of justice in the federal courts of the circuit, and pursuant to 28 U.S.C. § 332, announced the "Second Circuit Rules Regarding Prompt Disposition of Criminal Cases" to become effective six months after that date. Rule 4 reads as follows:

> "4. In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, or within the periods as extended by the district court for good cause, then, upon application of the defendant or upon motion of the district court, after opportunity

for argument, the charge shall be dismissed."

Portions of the "Statement of the Circuit Council" which accompanied the Rules bear repeating here:

> "The public interest requires disposition of criminal charges with all reasonable dispatch. The deterrence of crime by prompt prosecution of charges is frustrated whenever there is a delay in the disposition of a case which is not required for some good reason.

> \* \* \* \* \* \*

> "The public interest is not properly served by taking up the time of the court with the trial of stale and ancient charges and thereby further delaying the disposition of more important current cases, absent special circumstances."

In a recent "Memorandum To All United States Judges" dated December 28, 1970, Chief Justice Burger stated:

> "No system of justice can rationally justify delays running into years between indictment and final disposition. The public cannot understand and no one can explain or justify even as much as the two and three year courses of many criminal cases, from indictment to the end of all direct appellate review. Public patience is running out and we must respond."

In view of the Government's unnecessary and unjustified delay in bringing the defendants to trial, and the resulting prejudice to the defendants, defendants' motions to dismiss the 1966 and the 1967 indictments are granted pursuant to Rule 48(b), F.R.Cr.P., and the indictments are dismissed.

It is so ordered.

---

5. In any event, waiver is only one of the four factors to be considered by the court. United States ex rel. Solomon v. Mancusi, *supra*; United States v. Blanca

Perez, *supra* 310 F.Supp. at 553; United States v. Roberts, 293 F.Supp. 195, 197 (S.D.N.Y.1968); United States v. Mann, *supra* 291 F.Supp. at 274.