**UNITED STATES of America**

**v.**

**Alton BLAUNER et al.**

**No. 68 Cr. 168.**

United States District Court,
S. D. New York.

Aug. 5, 1971.

---

Whitney North Seymour, Jr., U. S. Atty., S. Dist., for plaintiff; Arthur A. Munisteri, New York City, of counsel.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendant Hegyi; Arthur L. Liman, New York City, of counsel.

Frank G. Raichle, Buffalo, N. Y., for defendant S. Stein.

Feldshuh & Frank, New York City, for defendant Allen; Sidney Feldshuh, Wynne B. Stern, Jr., New York City, of counsel.

## OPINION

TENNEY, District Judge.

Defendants Jerome Allen, Emil V. Hegyi and Sidney Stein move, pursuant to the Sixth Amendment to the United States Constitution and Fed.R.Crim.P. 48(b), to dismiss the within indictment on the grounds that they have been de-

nied their right to a speedy trial and because the Government has unnecessarily delayed prosecution of this case.

From the papers before me, the salient and essentially undisputed facts appear as follows.

On February 27, 1968, the instant indictment was filed against the five defendants named herein. Inasmuch as defendant Davis is deceased and Blauner has already pleaded guilty to one count of the indictment, the three moving defendants are the only ones remaining to be tried.

The indictment is cast in three counts —the first charging all three movants with conspiring to violate various sections of the federal securities laws (15 U.S.C. §§ 77q(a), 77x, 78i(a) (2) and 78ff(a)) by inducing members of the public to purchase securities of Terminal Hudson Electronics, Inc. (hereinafter referred to as "Terminal") at allegedly inflated prices during the years 1962 and 1963. Defendant Allen is further charged in counts two and three with fraudulently inducing two persons to purchase shares of Terminal in violation of 15 U.S.C. §§ 77q(a) and 77x.

On March 21, 1968, defendant Hegyi pleaded not guilty. Shortly after, on April 29, 1968, he moved pursuant to Fed.R.Crim.P. 7 and 16 for a bill of particulars and discovery and inspection. Presumably because the indictment charged Mr. Hegyi with unlawful activities occurring between June of 1962 and April of 1963, and was returned on the eve of the running of the statute of limitations, the Government was specifically put on notice by defendant Hegyi's memorandum of law, submitted in support of his April 1968 motions for a bill of particulars and discovery and inspection, that he (Hegyi) already felt that he had "suffered severe prejudice by the delay in initiating the prosecution",[1] and that any further delay would make it

"harder . . . to locate witnesses and relevant documents".[2] The Government was further advised that the broker with whom Hegyi dealt in Terminal stock, who allegedly would have been a witness in his behalf, was dead, and that several brokerage houses referred to in the indictment had gone out of business. Thus, since the prosecution was aware as of April 1968 of the prejudicial consequences which could result from unnecessary further delay in bringing this case to trial,[3] it would seem that diligent trial preparation was required in order to insure that defense witnesses and evidence, which were available after indictment, not become lost or otherwise unavailable during the post-indictment, pre-trial period. Indeed, in urging that broad discovery be permitted and a liberal bill ordered, counsel for Hegyi contended that because of the existing pre-indictment delay, the death of one potential witness and the loss of some documents, more detailed disclosure of the Government's case was necessary in order to ascertain what evidence would be required for the defense, and so that brokerage houses and others could be cautioned to save pertinent documents.[4]

In February of 1969, Hegyi's pre-trial motions were granted, permitting him broad discovery (his statements and grand jury testimony, and various records and documents referred to in the indictment) and the benefit of a liberal bill of particulars. Since, as indicated *supra*, counsel for Hegyi indicated his concern about the pre-indictment delay and possible consequences of any further delay, it was obviously incumbent upon the Government to promptly comply with the court's orders of February 1969.

With regard to defendant Allen, the facts concerning the Government's numerous defaults, to be noted *infra*, are substantially identical to those set forth

---

1. Fourth unnumbered page of Def. Hegyi's Exh. A annexed to Notice of Motion (dated June 18, 1971).

2. *Id.*

3. *Id.* at 5.

4. *Id.*

with regard to defendant Hegyi, except that discovery was not granted and a bill ordered to be furnished until May 5, 1969, approximately two and one-half months later than in the case of Mr. Hegyi.

In early March of 1969, counsel for Hegyi wrote to the Assistant United States Attorney then in charge of this case, requesting permission to inspect and copy those records and documents ordered to be furnished, and inquiring as to when the bill of particulars would be forthcoming.[5] Although the record is unclear as to whether a response to this letter was ever sent, there is no doubt that discovery was not furnished and the bill was not forthcoming. In September of 1969, another letter was sent by defense counsel to the attorney in charge of the Securities Fraud Unit, explaining the situation and requesting that the assistant in charge of the case telephone him in order to secure information and documents to which Mr. Hegyi was entitled.[6] Counsel was assured that he could expect a telephone call from the attorney in charge in the "immediate future".[7] Although there is again no evidence as to whether defense counsel was in fact contacted, it is abundantly clear that nothing was done with regard to permitting discovery or furnishing a bill. At this point it should be noted that despite defense counsel's diligent, albeit futile, attempts to secure that which he was entitled to, he was in no way obliged to twice remind the Government of its duty to comply with court orders.

Early in September of 1970, this case was assigned to me pursuant to this district's recently adopted system for the individual assignment of criminal cases. On September 29, 1970, a pre-trial conference was held in chambers for the purpose of determining the posture of the case and with a view to agreeing upon a date for trial. On the record, Mr. Hegyi's attorney advised the Court of the Government's default with regard to the discovery and bill to which he was entitled.[8] The assistant then in charge of the case indicated that he was involved in a protracted trial and therefore was not sufficiently informed about the instant matter. He assured the Court and counsel, however, that at the conclusion of the trial in which he was presently engaged he would commence preparation of the bill and attempt to locate and make available the documents and statements discoverable by the defendant. With regard to setting a trial date, Mr. Hegyi's attorney remarked that: "Whatever date is set, the important thing . . . is to get a look at the records. This case itself was brought almost to the day that the statute of limitations was about to run. It involves records of brokerage firms that are out of business. It is very difficult . . . to prepare a case like this where you are starting off with five years from the day the indictment was brought and then you add the two and a half years that have elapsed."[9]

After it became apparent that a trial date could not be set down for the spring of 1971 because of commitments of other counsel, and that a trial could not then be scheduled for January of 1971 because it appeared that discovery could not be completed sufficiently in advance thereof, November 25, 1970 (subsequently changed to November 24) was set by the Court as the date by which the outstanding bills were to be furnished and discovery and inspection completed.[10] A subsequent conference was scheduled for November 24 in order to determine whether a trial date could

---

5. Def. Hegyi's Exh. B annexed to Notice of Motion (dated June 18, 1971).

6. Def. Hegyi's Exh. C annexed to Notice of Motion (dated June 18, 1971).

7. Def. Hegyi's Exh. D annexed to Notice of Motion (dated June 18, 1971).

8. Def. Hegyi's Exh. E at 2, annexed to Notice of Motion (dated June 18, 1971).

9. *Id.* at 4.

10. *Id.* at 7.

then be selected. The Government attorney was advised to seek assistance in complying with the outstanding orders or to request reassignment of this case, since there then still existed the possibility of trying this indictment in January of 1971.[11]

I further indicated that although I was prepared to try this case in January of 1971, the defendants could not, in fairness, be forced to trial when they had not yet had the discovery to which they were entitled in a case that was "fairly ancient insofar as the facts . . . [were] concerned. . . ."[12]

At the November 24 conference, the Court was advised that the Government was still in default of the outstanding orders directing it to permit discovery and furnish bills of particulars. The Government further advised the Court that it would request a severance as to defendant Blauner and that he be tried first. As indicated *supra*, Mr. Blauner subsequently pleaded guilty to one of the counts in the indictment. Although the November 24 conference was unattended by a court reporter, it is undisputed that the Government was again ordered to comply with the outstanding orders by the end of the year.

On June 18, 1971, approximately eight months after the November 1970 pretrial conference, and six months after the second deadline set for the Government to comply with the two and one-half-year-old orders of another judge of this court, defendant Hegyi, quite understandably moved to dismiss the indictment as to him. Shortly thereafter, defendant Allen followed suit.

Although the Government is not in default of any orders with regard to defendant Stein, counsel for Stein joined in the other two motions to dismiss, and urged with equal vigor that his client has been severely prejudiced by the Government's deliberate and unjustified delay in bringing this case to trial.

In short, the situation as to the three moving defendants is as follows:

(1) It is more than nine years since the conspiracy is alleged to have commenced;

(2) More than eight years have elapsed since most of the illegal acts allegedly occurred;

(3) Over six years have passed since the alleged conspiracy terminated;

(4) It is more than three and one-half years since the indictment was filed; and with regard to defendants Allen and Hegyi,

(5) More than two years elapsed since the Government was first ordered to permit discovery and inspection and furnish a bill of particulars.[13]

■ One additional observation should be made concerning the two "Notices of Readiness for Trial" sent to the three moving defendants. Inasmuch as they were sent before any attempt was made to comply with outstanding orders of two district judges, twice reordered by another, these notices would appear to be meaningless pieces of paper which manifest nothing more than an illusory attempt to comply with the recently enacted Second Circuit Rules Regarding Prompt Disposition of Criminal Cases. It is an affront to both the Court and counsel, for the Government to try to force these defendants to trial when, for in excess of two years, it has disregarded lawful orders of three judges of this court and has consequently been respon-

---

11. *Id.* at 10. Admittedly counsel for Mr. Hegyi indicated that it was already late for a January 1971 trial date, but he nevertheless acknowledged that if such a date were set he would be ready.

12. *Id.*

13. Although the bills of particulars were eventually served and filed with regard to both defendants on July 14, 1971, it seems obvious that this was precipitated by the filing of the instant motions to dismiss. The same, of course, should be said with regard to the Government's active cooperation in discovery which apparently commenced on July 15, 1971.

sible for delaying the prosecution of an indictment which, when returned, related to facts and events occurring approximately five years past.

In opposition to the motions, the Government does not, significantly, dispute the facts as set forth above; rather, it contends that: (a) its defaults were both justified and excusable; and (b) the defendants have not been prejudiced by the delay.

The Government circuitously argues that since no firm trial date had been scheduled, it was justified in expending its time and available manpower on matters more immediately triable. Only brief comment need be made with regard to this patently specious contention. It was precisely because discovery had not been permitted and the bills not furnished that a definite trial date was not set at the pre-trial conference in September of 1970. Moreover, even assuming that the necessary trial time was not available as of late November, when the second pre-trial conference was held, had discovery been completed and the bills been furnished by that time, this indictment could have been tried at the first available date convenient to the Court and counsel. Thus, if indictments previously scheduled for trial by this Court were disposed of by way of guilty pleas, or if other cases warranted adjournment (both situations are of course not uncommon), time could have become available to try the instant case. Review of the records kept in my chambers reveals that one three-to-four week trial, United States v. Dioguardi, et al., 70 Cr. 213, tentatively scheduled to commence in April of this year, was marked off without date at the request of the Government. Thus, although it cannot be said with certainty that this indictment could have been tried this past winter or spring, it seems obvious that had the Government not *prevented* the defendants from preparing their cases, the chances of scheduling an earlier trial date would have been significantly greater.

One further comment should be made with regard to the Government's unilateral decision to further defer compliance with numerous court orders in order to devote time to more imminently triable indictments. Conspicuously absent from the present record is any request for an extension of the November 24 and December 31 deadlines set by this Court for compliance with orders previously entered in February and May of 1969. The Government is no more entitled to unilaterally decide which orders to obey and which to ignore than is any other party to a litigation. If, in fact, additional time were needed to permit discovery and prepare the bills, the appropriate application should have been made.

I find equally unpersuasive the other factors set forth by the Government in mitigation of its numerous defaults. That the United States Attorney's Office underwent substantial personnel changes during the winter of 1969–70 certainly does not excuse the numerous defaults and delays at issue herein. Similarly, merely because defendant Allen pleaded guilty to another indictment in November of 1970, and defendant Stein was convicted after trial on another indictment in May of 1971, it cannot be said that the delays were less prejudicial or the defaults more justifiable. If other matters, such as pursuing older, more complicated indictments against defendants Stein and Allen, warranted further adjournment of the time set for permitting discovery and furnishing the bills, this decision should have been made by the Court upon proper application. These allegedly mitigating factors were not made known to the Court until now, the eleventh hour, and therefore are flatly rejected as obvious bootstrap attempts to justify otherwise inexcusable conduct.

With this factual background in mind, we turn to consider the legal issues involved herein.

It is fundamental and ancient law that: "In all criminal prosecutions, the

accused shall enjoy the right to a speedy . . . trial. . . . " U.S.Const. amend. VI. Consistent with this unimpeachably sound principle is Fed.R.Crim. P. 48(b) which, in pertinent part, provides that: "If there is unnecessary delay in presenting the charge to a grand jury . . . or . . . in bringing a defendant to trial, the court may dismiss the indictment."

 As has so often been stated by judges of this district and circuit, consideration of a motion to dismiss pursuant to the Sixth Amendment and Rule 48(b) is controlled by the following four factors: "the length of delay, the reason for the delay, the prejudice to defendant, and waiver by the defendant." United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963); accord, United States v. DeMasi, 445 F.2d 251 (2d Cir. filed July 9, 1971); United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 90 (2d Cir.), cert. denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969); United States v. Simmons, 338 F.2d 804, 807 (2d Cir. 1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L. Ed.2d 276 (1965); United States v. Blaustein, 325 F.Supp. 233, 236 (S.D.N. Y.1971); United States v. Colitto, 319 F.Supp. 1077, 1079 (E.D.N.Y.1970); United States v. Stone, 319 F.Supp. 364, 365–366 (S.D.N.Y.1970); United States v. Mann, 291 F.Supp. 268, 270 (S.D.N. Y.1968). Of course, since these factors provide no discernibly precise standards for determining when an indictment should be dismissed, it is necessary to consider the four factors collectively and evaluate each case in light of the existing circumstances. United States ex rel. Von Cseh v. Fay, 313 F.2d at 623; United States v. Blaustein, 325 F.Supp. at 236.

 The 1968 indictment at issue herein charges a conspiracy and other criminal activity which at present date back between approximately seven and nine years. Although the charges, when filed, were not time-barred by the applicable limitations periods, the pre-indictment period is not thereby eliminated from consideration of the cumulative effect of the delay. The statute of limitations is not "the sole constitutional measure of permissible Sixth Amendment [pre-indictment] delay", United States v. Colitto, 319 F.Supp. at 1083. The Government may not blissfully defer prosecution during the limitations period, Hodges v. United States, 408 F.2d 543, 550 (8th Cir. 1969), since a prejudicial or deliberate delay occurring within the statutory period may deprive a defendant of his constitutional right to a speedy trial. United States v. Colitto, 319 F.Supp. at 1084; United States v. Coppola, 296 F.Supp. 903, 905 (D.Conn.1969). Only recently the Court of Appeals for the Second Circuit noted that even within the limitations period, a delay may approach constitutional proportions if the accused's capacity to prepare his defense is impaired. United States v. DeMasi, supra.

The instant situation, of course, presents a significant period of pre-indictment delay, which, even if excusable, was attended with the death of one potential defense witness and the loss of records and documents. Since the alleged prejudice resulting from the pre-indictment period was made known to the Government over three years ago when defendant Hegyi moved for discovery and inspection and a bill of particulars, it was incumbent upon the prosecution to make every effort to minimize the post-indictment delay. It is now more than two years since the pre-trial motions were decided, and the Government, obviously in response to the motions to dismiss, has just commenced compliance with orders which have been outstanding for more than two years. From the foregoing, it seems plain that there have been inexcusably long delays for which the Government is entirely responsible.

 We now consider the prejudice, if any, which has resulted from the delay. Admittedly, there is ample authority to presume the existence of prejudice in the face of such an inexcusably long

delay occasioned by the prosecution. United States v. Blaustein, 325 F.Supp. at 238; United States v. Blanca Perez, 310 F.Supp. 550, 551 (S.D.N.Y.1970); United States v. Chin, 306 F.Supp. 397, 399 (S.D.N.Y.1968); United States v. Roberts, 293 F.Supp. 195, 198 (S.D.N.Y.1968). This presumption would appear even more valid when, as here, the Government's continuous defaults of orders directing it to provide bills of particulars and permit discovery and inspection have unjustifiably increased the defendants' burden of ascertaining and specifying the documents and evidence which have been lost or have otherwise become unavailable.[14]

Apart from this presumption and despite this handicap, substantial actual claims of prejudice have been set forth. With regard to Mr. Hegyi, it is alleged and undisputed that two potential witnesses and his co-defendant Leo Davis, all of whom are deceased, would have testified on his behalf. At least four brokerage houses referred to in the indictment have gone out of business subsequent to the time Mr. Hegyi moved for discovery and inspection. Moreover, since the crime charged against Hegyi occurred between seven and nine years ago, were he to testify on his own behalf (which would be likely in view of the fact that he has never before been charged with a crime), he would run a serious risk of impeachment due to memory lapses largely attributable to the prosecution's delay. Finally, and perhaps more importantly, the repeated defaults by the Government for over two years have impeded each of the defendants in the preparation of his defense. Even if, as the Government optimistical-

ly suggests, discovery reveals that all relevant documents have been preserved or are available, this does not negate the prejudice that has resulted from withholding the same for over two years. As another judge of this court has recently noted: "With the passage of time, the written word assumes greater authority and becomes more difficult to explain." United States v. Blaustein, 325 F.Supp. at 238. It is therefore apparent that the Government is singularly responsible for permitting more than two years to elapse, thereby adding authority to its documents and rendering the material contained therein more difficult to rebut.

It has further been recognized that "[t]he passage of time . . . may dangerously reduce [a defendant's] capacity to counter the prosecution's charges. Witnesses and physical evidence may be lost; the defendant may be unable to obtain witnesses and physical evidence yet available. His own memory and the memories of his witnesses may fade." Dickey v. Florida, 398 U.S. 30, 42, 90 S.Ct. 1564, 1571, 26 L.Ed.2d 26 (1970) (concurring opinion of Mr. Justice Brennan).

 ' I find wholly irrelevant with regard to the issue of prejudice the Government's guarded but empty offer to stipulate to facts which the defendant may claim to be presently unprovable because documents and evidence have been lost. It cannot be seriously argued that stipulating to facts favorable to the defense, which may have been provable by live testimony, sufficiently remedies the prejudice existing herein.

With regard to defendant Allen, who has obviously suffered the same inabili-

---

14. That the presumption of prejudice takes on greater validity under circumstances like those existing herein is borne out by a letter from counsel for Mr. Hegyi, dated July 28, 1971, which in substance states: "I write to advise the Court that since the argument of our motion we have learned of the death of another witness in the case.
[Mr. X] . . . whose name appears in the grand jury testimony at

least a half-dozen times, died in the fall of 1969, seven months after . . . [the district judge] first ordered the Government to produce the discovery documents. I did not bring . . . [Mr. X's] death to the Court's attention earlier because it was only upon reading the grand jury minutes we received from the Government last week that I first heard of him."

ty to adequately prepare his defense because of the Government's numerous defaults, substantially similar prejudice has attended the delay. He, too, has been deprived of the possible benefit of the testimony of one deceased witness and his recently deceased co-defendant. Moreover, since, as indicated *supra*, many of the brokerage houses referred to in the indictment are presently defunct, he, too, presumably will not have the benefit of many of the books and records of these businesses.

Counsel for defendant Stein, who has joined in the two motions but has not submitted any papers in support of his position, ably demonstrated upon oral argument that the prejudice suffered by his client substantially parallels that of the other moving defendants. Although not specifically entitled to a bill of particulars or discovery, it seems plain that he would have had the benefit and use of the information made available to his co-defendants. In addition, since his case was not severed from those of his co-defendants, he could not have proceeded to trial any earlier than defendants Allen and Hegyi.

In short, since the filing of the indictment one co-defendant has died, another has become unavailable by recently pleading guilty to one count of the indictment, pertinent books and records have become unavailable because numerous brokerage houses referred to in the indictment have gone out of business, and the Government for in excess of two years has ignored several orders of at least three judges of this court to the serious detriment of the defendants.

■ Finally, we must consider whether any defendant waived his right to a speedy trial. As I have indicated twice before:

"[O]nce a defendant has been demonstrably prejudiced by an inexcusably long delay occasioned by the prosecution, it would seem naive and insensible to suggest that because he has not affirmatively moved for a speedy trial he has impliedly waived his right thereto. *Compare* Klopfer v. North Carolina, 386 U.S. 213, 226, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) *with* Aetna Ins. Co. v. Kennedy to Use of Bogash, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L. Ed. 1177 (1937) and Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). It would seem beyond the pale of 'fair play' and repugnant to the Fifth Amendment requirements of due process to find that a defendant has waived his right to a speedy trial, even though disadvantaged by the prosecution's unjustified delay, simply because he has not taken the 'relatively unlikely step of demanding an early trial.' *See* United States v. Mann, *supra*, 291 F. Supp. at 274. Any attempt to 'saddle' a defendant to an implied waiver under such circumstances must fall of its own weight under the defendant's more basic constitutional right to be tried fairly in accordance with due process of law. It is unimaginable, even under the most narrow view of the Fifth Amendment requirements of due process, that a trial conducted in the face of existing prejudice to the defendant, caused by the Government's unjustified delay in prosecution, could be constitutionally permissible." United States v. Stone, 319 F.Supp. 364, 367 (S.D.N.Y.1970); *accord*, United States v. Haggett, 438 F.2d 396, 401 (2d Cir. 1971).

Other judges of this court have similarly noted that a defendant cannot be deemed to have waived his right to a speedy trial if prejudiced by an unexcused delay attributable to the prosecution. United States v. Blanca Perez, 310 F.Supp. at 553; United States v. Mann, 291 F.Supp. at 274; United States v. Roberts, 293 F.Supp. at 195. If waivers of fundamental constitutional rights must be intentionally made and are not to be lightly inferred, then courts must indulge in every reasonable presumption against them. United States v. Dillon, 183 F.Supp. 541, 543 (S.D.N.Y. 1960). *See* Johnson v. Zerbst, 304 U.S. at 464, 58 S.Ct. 1019. In a concurring opinion in Dickey v. Florida, 398 U.S. at 49, 90 S.Ct. 1564, Mr. Justice

Brennan cast even further doubt upon the view that an accused could lose "his right to a speedy trial by silence or inaction. . . ."

It further appears with regard to Hegyi and Allen that neither of these defendants can be deemed to have waived his right to a speedy trial since "a defendant with an order outstanding against the government to produce a bill of particulars by which he will be more fully 'informed of the nature and cause of the accusation' (U.S.Const. Amendment VI) has not waived any rights, and the burden lies on the prosecutor to obey the orders of the court and move the case forward to its next stage." United States v. Chin, 306 F.Supp. at 400; *accord*, United States v. Blaustein, 325 F.Supp. at 240.

In light of the foregoing authority and in view of the prejudice (both actual and presumptive) heretofore noted, I conclude that none of the three defendants has waived his constitutional right to a speedy trial.

Finally, it would be useful to consider the effect of the delays at issue herein in light of the recently adopted Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, which, in pertinent part, provide:

"4. In all cases the government must be ready for trial within six months from the date of arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried . . . whichever is earliest. If the government is not ready for trial within such time, or within the periods as extended by the district court for good cause, then, upon application of the defendant or upon motion of the district court, after opportunity for argument, the charge shall be dismissed.

8. A demand by a defendant is not necessary for the purpose of in-voking the rights conferred by these rules."

Although Rule 5 specifically provides for time periods which should be excluded from the computation of the time by which the Government must be ready for trial, it is apparent from the record before me that none of these grace periods are applicable to defendants Hegyi and Allen. Thus, while Rule 5(a) provides for the exclusion of the period during which other charges against a defendant are being tried, it is undisputed that defendant Allen pleaded guilty to other charges on November 13, 1970 and that defendant Hegyi was not the subject of any other outstanding charges. Although defendant Stein was convicted after trial in May of this year, this still does not excuse the prejudicial delay from dismissal under the Sixth Amendment and Fed.R.Crim.P. 48(b). Further applicable to defendants Hegyi and Allen is Rule 5(e), which provides for the exclusion of:

"A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance. In all other cases the defendant should be granted a severance so that he may be tried within the time limits applicable to his case."

Thus, while the delay with regard to Stein might have been excusable, absent the resulting prejudice hereinbefore noted, the trial delay as to the other two defendants is patently inexcusable under the Second Circuit's rules. The purported "Notices of Readiness for Trial" sent by the Government cannot be taken seriously in view of its numerous defaults of court orders pertaining to the furnishing of a bill of particulars and permitting discovery and inspection.

Accordingly, and for the foregoing reasons, the motions to dismiss the indictment as to defendants Hegyi, Allen and Stein are granted.

So ordered.